Good morning and may it please the court. Eliodoro Moreno Jr. for the petitioner Jasvir Singh-Garcha. Substantial evidence does not support the board's adverse credibility finding and thus this court must reverse the board's decision and remand for further consideration of Mr. Singh's applications for relief. Counsel, let me ask you about what the board said about his claims not to have been arrested in India. They identify that as a reason why his credibility is lacking. The BIA talks about falsehoods which he admits in the border patrol hearing and why isn't that alone enough to sustain the credibility problems that your client had? It is not sufficient your honor because the board did not consider Mr. Singh's reasonable explanation as to why he made those misrepresentations. Well it did consider that. I mean the IJ found that he was not truthful about how the interview was conducted. He said it was in Spanish and the IJ found and the board seems to have accepted the idea that he was using that as a cover-up for not having told the truth. Well first off your honor the BIA did not consider Mr. Singh's explanation for why he made that misrepresentation. How do you know that? Well because Mr. Singh explained that he did so because he was afraid that he would be deported if he told the truth. Nowhere in the BIA's decision does the board consider that explanation. But also in addition the court mentioned the CBP sworn statement at the border and also the testimony of officer Cerna. But those two things do not undermine Mr. Singh's testimony because Mr. Singh's testimony that he was interviewed in Spanish and did not understand everything that he was asked is supported by the record. Now that was rejected by the IJ. The IJ specifically found that the agent's testimony is more reliable than your client's and that's a credibility finding and how do we get around the credibility finding? Well we get around that your honor because the immigration judge and the board did not say they considered the entire record. I mean you keep making these statements that they didn't consider the entire. I've read the entire record it's like this. All right and the BIA's opinion is a couple pages the IJ's opinion is a lot more lengthy but they say that they considered everything. Well we know they didn't consider everything your honor because in the record on form I-213 officer Cerna himself made a contemporary that is a contemporaneous record where he specifically stated that he conducted that interview in Spanish. I'm afraid you're trying to get us to reweigh things. We are here on a petition. We're kind of an appellate court even though it's not an appeal and so you're asking us to go back and make decisions that are that contradict what the IJ and the BIA said about his statements to the to the border patrol officer. How can we do that? That's not what we're requesting your honor. We're requesting that the court reverse the IJ's decision because it's not supported by substantial evidence in that the IJ nor the board grappled at all with the form I-213 which specifically contradicts officer Cerna's testimony and the I-867. You know I hate to keep interrupting you but these are things that the IJ grappled with and the BIA has said we follow the Redor case and if you look at the Redor case they say we're not supposed to redo findings of fact. We're supposed to look at an IJ's findings for clear air and they say we don't find any and so the problem I'm having with your argument is you're asking us to start over as an initial court to make these credibility decisions which we're not supposed to be making. Your honor I would disagree that that is what the petitioner is asking in this case. We are asking that when there are specific contradicting evidence as to testimony which the judge credited as opposed to the petitioners the BIA and the immigration judge at a minimum has to grapple with that contradicting evidence. They say they did. It does not say that they did your honor. Nowhere is the I-213 mentioned. We decide almost probably over 75 percent of our cases with two-page documents called memoranda disposition and we don't go back and redo every little jit and tittle of whatever was done down below and we say that all the time and so when the judge says they find that the IJ's correction the IJ's decision is free of air isn't that saying that the contentions that were made are have been dismissed as not substantial? No your honor. Here the BIA did not affirm under matter of Bourbono. Thus we look at the BIA's decision as to the reasons why the adverse credibility finding is affirmed and here they did not consider that reason. I hate to keep interrupting you but I'm not sure that's right. Under Redor we said completely you just don't look at you don't go beneath the surface you look for clear error. So they looked for clear error and they say we don't find any. Your honor the BIA specifically addressed five reasons here and one of them was the misrepresentations at the border. However this court must remand because in lie on that specific issue this court made clear that and when the BIA is going to find an inconsistency they have to consider the respondent's explanation. On that point the BIA did not do so because it did not mention and neither did the IJ the I-213 which directly contradicts officer Cerna's testimony. Would you agree that the IJ considered every one of your client's explanations? No your honor. The IJ did. I'll read you the record for the next ten minutes. Well your honor. The IJ went through that and he said I was nervous this was in Spanish. He considered all of those things for page after page after page. The IJ did not consider the form I-213 which contradicts officer Cerna's testimony. Did the IJ have that form in front of him? Yes. Her excuse me. Yes it is in the record your honor. It is an administrative record. How can you say that she didn't consider it? Because it specifically contradicted officer Cerna's testimony and at the very least in that contradiction the immigration judge should have grappled with that and how that didn't undermine officer Cerna's testimony. She did and she said the interview was conducted entirely in Pujabi and your client lied to the California border patrol agent. Well that finding is simply not supported by the record. He admits he lied. Your honor. Did he admit he lied? He admitted he lied about his date of birth, about a version of his name and how he got here. That is all he admitted he lied about. Whether he came here or not to work. He also said he had proof of his party membership and it turns out that was a letter that was written after he said he had it. Your honor the court is talking about two separate things. The misrepresentations about his date of birth, his name and the way he traveled here is one issue. Now the court before that specifically said that the IJ found that the interview was conducted entirely in Spanish and that is a separate issue and it is specifically contradicted in the record by the form I-213 which officer Cerna specifically prepared and it contradicts his own testimony. And that decision was made by the IJ and the IJ accepted his testimony that it was conducted entirely in Punjabi. And the petitioner respectfully disagrees that the immigration judge considered that document because the IJ in no way grappled with a direct conflicting statement to officer Cerna's. At the very least the immigration judge and the board should have done that. It did not do that in this case. Now the five reasons for the adverse credibility finding are not supported by the record. Thus the court then moves on to the lack of corroboration. And the BI cited three areas for the lack of corroboration. Objective proof of payment of bribes to the police, documents from police confirming his arrests and the lack of details about his arrests and party letters he submitted. The board and the IJ violated Mr. Singh's due process rights by both failing to consider Mr. Singh's explanations for his inability to provide the requested documents and by citing documents which lacked detail when the IJ did not inform Mr. Singh that the documents provided were insufficient or give him an opportunity to obtain a document that satisfied her as this court requires in Batarai in the  Do you see that if the credibility finding stands that corroboration is irrelevant? That is correct, Your Honor. But substantial evidence does not support the corroboration and I reserve the rest of my time for rebuttal. Thank you, Counsel. Thank you. We'll hear from the government. Good morning. May it please the Court, Sharon Clay on behalf of the government. The board's dismissal of petitioner's application for asylum for lack of credibility is supported by substantial evidence. Can you explain why and can you address specifically what he said that obviously nobody considered the contradictions between the form and the testimony? Well, yes. His statement is actually incorrect. The I-213 actually establishes that he was given his advisals in Spanish. It doesn't say anything about the entire interview. I turned to the record, so if you need the page number later, I could provide that for you. I have it here. Okay. With regard to the admissions, to the extent that even one of the other arguments he raises that lack of detail should not be held against him in terms of his omission of the arrest, I would argue that in this particular case, his omission was not a failure to include a detail. His omission was actually an affirmative denial. And this Court has actually recognized the distinction between lack of detail and affirmative denials of information in interviews. Would you turn to cooperation for a minute? I know that's jumping ahead in a sense, but I found the board's handling of the cooperation puzzling. We see a lot of cases out of the Punjab and a lot of cases recite that people pay bribes to get out of jail. I've never seen any requirement in another case, and maybe you can correct me, that they required a bank statement as proof of showing a bribe. That is unusual that they would require a bank statement, but in this particular case . . . Well, I mean, if you're paid a bribe, usually you aren't going to write a check. But you would have some evidence of where your money or your finances may have come from. Well, I mean, I just have never seen the board require proof of a bribe in requiring cooperation. I mean, usually bribes aren't conducted in the public sector. You don't keep records of the bribes. That's true, but in this particular record, the immigration judge was concerned with reports that the Department of Homeland Security submitted that showed that there was a problem with fraudulent documents coming out of India. If you look at the record . . . Right, but that was . . . But that was why the bank record requirement would have come up. I mean, the extent of the . . . But there was no documented issue here. I mean, that was . . . he was asking for additional document as proof. I'm just curious, because we have thousands of cases out of India, and thousands of . . . I mean, we get in the circuit, and I've never seen a requirement, because a lot of them, that's just the way the things were happening in the Punjab. They were bribing local officials to get their kids out of jail. The other concern that the IJ had was that there were no evidence in the record that was contemporaneous to any of the information he was trying to substantiate. The fact that all of his evidence actually post-dated his arrival in the United States caused the immigration judge more concern about the authenticity of the documents that he was providing. Hence, the IJ was actually requiring these specific types of documents to kind of overcome . . . Was he wanted in corroboration? Was he given an opportunity to provide corroboration? Yes. Yes, he was. What did he ask for? He specifically asked for bank records. He wanted some information from the attorney with regard to criminal arrests and some other types, just to objectively confirm his arrests in . . . There were multiple hearings, and at one point at the end of a hearing, the IJ even said, well, the counsel for the government has given you a long list of things that you better go and find. Correct. And . . . Well, what was it that you expected him to do? What didn't he do that you expected? Well, he had done exactly what he had been doing from the beginning. He was contacting his brother in India and asking him to try to achieve these documents. And his brother was supposed to go to the police and say, did you arrest and beat him? No, and the court didn't . . . the IJ didn't require him to do that. What the IJ said is that he could use his attorney that he did, in fact, hire to actually file other complaints in India to pursue his arrest record. And there was no explanation for why no arrest record was actually provided. But you know, again, I just haven't seen that requirement in the types of cases coming out of India. And as I recall, they generally don't keep all the arrest records in the kind of detailed way that we do in the United States, particularly in the Punjab. That's true. I haven't either. But I would suspect that the reason why they did that is because of the volume of records that Petitioner did actually submit to support his claim. And I guess trying to find a reason or explanation for why this large volume of records failed to actually corroborate his claim, he looked for more specific documentation. And again, like I said, because there was no contemporaneous evidence of any of the events that actually took place, the immigration judge kind of went a little bit more aggressive, I think, on trying to find documents that would corroborate his claim. There was a suggestion that the identity card was a forgery. And the government said, we're going to follow up on this. And then nothing happened. Is there any explanation in the record why nothing happened to prove it was a forgery? Not to my knowledge. There's a misspelling on the card, isn't there? Correct. The name is spelled M-A-A-N. N, correct. There is a misspelling on the card. There were some issues with that. That's not anything you rely on, the BIA relied on in its decision. Well, yes, to some degree. Where the board actually relied on the immigration judge's determination about the foundation of the membership card, the board has kind of adopted the IJ's position on why that card is not sufficient. Where does it say that? I don't have it right in front of me. Let's see. In addition to that, I'll give you a chance. Wait a minute, let me see. I didn't identify the page on here. I do indicate that the card bore no indication of reliability. There was no foundation for it. The name was spelled wrong. And it was also submittal by the Department of Homeland Security. Is that in the board decision? Well, not in the board decision, in the immigration judge's decision. Okay, but we're talking about the board decision here. Yes, we are talking about the board decision. And what they relied on for credibility, as I understand what they're relying on. The omission? One thing is, yes, that his airport interview or his original interview. And you know, of course, we have cases that say those interviews are not very reliable, and that you must look at them in the entire context of the case, not alone. That's true. However, in this particular case, it's not quite the same scenario as an airport interview. This is the record of sworn statement. The record of sworn statement provides a more reliable summary of the events that occurred that day. And the reason why I say that is because... Well, it's the border patrol interview, whatever it is, that initial interview, where people who have been beaten in their own countries are somewhat nervous about telling the police as soon as they arrive what their problems are, so we don't give that the same kind of weight that we do to other more formal hearings. So, that's the first thing. The second is that he claims he was arrested and mistreated numerous times. However, he provided only vague testimony. Well, I went through the testimony. I didn't find it vague at all. And I thought, well, there were lots of explanations he offered that were hardly vague as to what he did. But getting with the first question that you were asking, in terms of not relying on persons who come into the country, that is true. The court does not give a lot of credence to some of the interviews that happen upon entry because of that very fact. People may be traumatized. However, those concerns in this case were alleviated by the fact that this was actually conducted by the CPA officer and it was a record of sworn statement. Petition was asked over and over again whether or not he understood the questions that were being asked of him. He doesn't refute that any of the questions or any of the other answers in the sworn statement are incorrect, other than the one saying that he did or did not... Did he come directly here from India? No. He came from Chile. How many years did he spend in South America before he even showed up here? Three to five years, he said, depends on which part of the record you look at. And in terms of the Spanish speaking at the time of advisals, that would have been normal and that was bore out in the testimony because the agent said that, well, if an alien comes to the border of Mexico, there's a presumption that maybe you're already speaking Spanish. He admitted that during his interview that he did know a little bit of Spanish, so it didn't, it wasn't a problem with the immigration judge having some level of communication with him with regard to his Spanish at the time because he did understand some Spanish. That said, my time is about up. Did you have any other questions? I did have one. The other thing, one other thing I found puzzling about the BIA decision is it says, with respect to the affidavits that the respondent cites on appeal, we note that none of the affidavits were presented for cross-examination and therefore their statements merit minimal weight. But first, in any immigration case, you're not going to be able to produce live witnesses from foreign countries. And two, the United States, in many of its cases, relies on affidavits to submit to IJs. We've had cases, and I saw one with Judge Trott, where the United States relied on a letter from a foreign country. So, I'm puzzled by that. In this particular case, the concern that the immigration judge had was that all the affidavits were similarly written. And because none of the affidavits came in in the formal Indian language, the immigration judge thought it would be more helpful had the affidavits came in with some certification that the affidavits actually even understood English because even, assuming that they know English. Not to interrupt, but the concern cited by the BIA is that they were not presented for cross-examination. But they're not subject to cross-examination, yes, correct. Right, but I mean, it was, we don't expect people to produce live witnesses from foreign countries, do we? Well, he could have in this particular case. He actually lives with somebody who submitted an affidavit that's a part of that whole, that he lived with, Avatar Singh. He showed up in court, but then the IJ seemed to say, we don't really need to hear from this person. Yeah. That's true, too. And then, of course, the father's affidavit, which turned out to be a problem. Because he was incompetent. Yes, because he was incompetent. Just one minute to go back to the only really substantive reason they found him not credible, that they said his testimony was vague, and that he claimed that he couldn't name a single candidate for whom he campaigned, which was not correct. He named a couple of candidates. He said, being highly involved, he admitted he only voted in one election. And he explained under examination at great detail, many times, why he didn't vote, what duties he was performing, as well as naming the candidates for whom he campaigned. The board statements are factually incorrect. But, okay. And it was not vague at all. It was very specific, what he said. But a lot of it. The actions he performed at the elections, what his duties were. And the only answer they have to that is that it was vague, and he couldn't name a candidate when he named two. Well, when he did name the two candidates that he named, he couldn't even identify where their districts were. And one of them is allegedly his friend. And the other person that he actually named, as a person that he voted for, didn't even appear on a voter roll that the DHS had provided. Although I'm clearly aware that a opposing counsel had addressed this particular issue in his brief, when he said that something, he was making a distinction between a locked by something, a local or general election, he actually missed the documents that had to do with the MLA legislative assembly elections. So there was not only just the records for the local elections, but there also was in the records for the MLA election that he claims that he had voted in, and the person that he did name, Baljinder Singh's name, did not appear on those records. But you'd have to admit that when the BIA said, cited his inability to name a single candidate, that's just simply wrong. Well, it took a long time for him to actually identify somebody. He had been asked repeatedly for a while. But they said it was undercut by his inability to name a single candidate, and he certainly named Anup Singh. He named two, but, well, one. He did name one, but that was, like I said, long after he had been asked for this information. He could have been able to, he wasn't more forthcoming about it. But that's not what the BIA said. They said he couldn't name one. Well, yeah. Correct. He did. He eventually made one. But even with this particular candidate, his memory of this candidate is very faulty. He doesn't remember what district he's in. He doesn't know where he hung this particular candidate's posters. And if you're that politically active, you would think that you would at least remember where you campaigned. You know, I don't even know what district I'm in at the moment. It keeps getting reapportioned. The number changes. That's true. Mine, too. When it changes, it does get difficult. But I know who I pulled the lever for. I won't ask you. Thank you, counsel. Thank you. Way to rebuttal. Thank you, Your Honors. First off, addressing the I-213 and the I-867, Officer Cerna, and this is at Administrative Record 626 in the transcript, he was specifically asked, and he testified, that he did not go through the I-867 until after the interpreter was on the line. And that is simply not correct. Because the I-213, which he prepared, says that he went through, even as the government suggests, the jurat in the Spanish language. So that is a clear contradiction. In addition, I was the attorney down at the trial court. And Administrative Record 650, I did submit a request for criminal records to the Punjab Police, which was not responded to. In effect here, substantial evidence does not support the adverse credibility finding, and the BIA did not follow this court's case law regarding corroboration. And thus, this court must remand to the BIA. Thank you very much. Thank you, counsel. The case just arguably submitted for decision.
judges: Reinhardt, Trott, Thomas